UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

THOMAS WOODRUFF and,             :    Civil Action No. 06-3815(NLH)
MICHELLE WOODRUFF,               :
Individually and on behalf of    :
their minor son                  :
BRANDON WOODRUFF,                :
                                 :
        Plaintiffs,              :
                                 :
    v.                           :    **OPINION**
                                 :
HAMILTON TOWNSHIP                :
PUBLIC SCHOOLS,                  :
et al.,                          :
                                 :
        Defendants.              :

**APPEARANCES:**

Thomas Woodruff
Michelle Woodruff
2419 Lahn Lane
Mays Landing, NJ 08330

   *Pro Se*

Patrick J. Madden, Esquire
Madden & Madden
108 Kings Highway East, Suite 200
P.O. Box 210
Haddonfield, NJ 08033-0389

   *Attorney for Defendants*

This matter has come before the Court on Defendants' motion to dismiss certain claims of Plaintiffs pursuant to Federal Civil Procedure Rule 12(b)(6). For the reasons expressed below, Defendants' motion will be granted in part and denied in part.

**BACKGROUND**

Plaintiffs Thomas and Michelle Woodruff are parents of

Brandon Woodruff,[1] who was a seventh grade student at a middle school in Mays Landing, Hamilton Township, New Jersey at the time they filed their Complaint.  The Woodruffs, on behalf of Brandon, filed a five count Complaint, *pro se*, against Defendant Hamilton Township Public Schools and a number of teachers and school administrators.  Plaintiffs claim that Defendants violated the Americans with Disabilities Act[2] and Section 504 of the Rehabilitation Act of 1973 by failing to provide their son, who is diagnosed with Attention-Deficient Hyperactivity Disorder (ADHD), with an individualized "504 Plan"  (Count I). (Compl. ¶ 1, 62-63.)  Plaintiffs also claim that certain Defendants, three of Brandon's teachers, created a hostile environment for Brandon (Count II).  (Compl. ¶ 62-64 (sic), at pgs. 16-17.)  Additionally, Plaintiffs claim that the Defendant Section 504 Coordinator and all other Defendants were negligent in their failure to implement a Section 504 Plan (Count III).  (Compl. ¶ 65-72.)  Further, Plaintiffs claim that the superintendent, principal, and vice-principal defendants retaliated against them "for bringing to light various issues with teachers centered

---

[1] Plaintiffs filed their Complaint using the full name of their minor child, rather than electing to use his initials.

[2] For their ADA claims, Plaintiffs have cited 42 U.S.C. § 12111 and § 12117 of Title I of the ADA.  Because Title I prohibits discrimination by employers, Plaintiffs' ADA claims will be construed as being brought pursuant to Title III, which prohibits discrimination in places of public accommodation.  See 42 U.S.C. §§ 12181-12189.

around Brandon's 504 Plan and the failure of the school to act on those issues" (Count IV). (Compl. ¶ 73-79.) Finally, Plaintiffs have asserted a claim for emotional distress (Count V). (Compl. ¶ 80-85.) For these alleged violations, Plaintiffs request an injunction ordering Defendants to refrain from further violations of Brandon's civil rights, an immediate implementation of a Section 504 Plan for Brandon, a declaratory judgment stating that Defendants violated Brandon's civil rights, and compensatory and punitive damages. (Compl. ¶ 85 (sic), at pg. 22.)

Defendants have moved to dismiss all of Plaintiffs' claims against the individual teachers and administrators as they relate to Section 504 of the Rehabilitation Act, as well as Plaintiffs' hostile environment claim. Plaintiffs have opposed Defendants' motion.

## ANALYSIS

### A.    Motion to Dismiss Standard

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.

3

Civ. P. 8(a)(2).  Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim.  <u>Bogosian v. Gulf Oil Corp.</u>, 562 F.2d 434, 446 (3d Cir. 1977).  However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  <u>Baldwin County Welcome Ctr. v. Brown</u>, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" <u>Bell Atlantic v. Twombly</u>, 127 S. Ct. 1955, 1969 n.8 (2007) (quoting <u>Scheuer v. Rhoades</u>, 416 U.S. 232, 236 (1974)).  A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss.  <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1429-30 (3d Cir. 1997).  The defendant bears the burden of showing that no claim has been presented.  <u>Hedges v. U.S.</u>, 404 F.3d 744, 750 (3d Cir. 2005) (citing <u>Kehr Packages, Inc. v. Fidelcor, Inc.</u>, 926 F.2d 1406, 1409 (3d Cir. 1991)).

A court in reviewing a Rule 12(b)(6) motion must only

4

consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. Southern Cross Overseas Agencies, Inc. v. Kwong Shipping Group Ltd._, 181 F.3d 410, 426 (3d Cir. 1999). A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56. Fed. R. Civ. P. 12(b).

### B.   Plaintiffs' Claims Against Individual Defendants

Defendants argue that Plaintiffs' claims against the teachers and school administrators should be dismissed because individuals cannot be held liable under Section 504 of the Rehabilitation Act or the ADA.

#### 1.   *Section 504 of the Rehabilitation Act*

Section 504 provides, in relevant part:

> No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a).

5

The Third Circuit has held that if an individual defendant does not receive federal aid, a plaintiff cannot state a claim against him or her under the Rehabilitation Act.  See Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir. 2002).  Here, Plaintiffs have not alleged that any of the teachers or administrators receive federal aid.  Consequently, following Emerson, the individual defendants cannot be held liable under Section 504 of the Rehabilitation Act.

In their opposition, Plaintiffs contend that 42 U.S.C. § 1983 provides another vehicle to enforce their rights under Section 504 against the individual defendants.  Plaintiffs, however, have not pleaded any claim pursuant to § 1983 in their Complaint.  Because Plaintiffs are proceeding *pro se*, and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Estelle v. Gamble, 429 U.S. 97, 107 (1976), the Court will consider the issue as if Plaintiffs are seeking leave to amend their Complaint to add such a claim, see Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (instructing that leave to amend is freely given in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment).

To support their contention that § 1983 permits them to maintain a claim against the individual defendants, Plaintiffs

6

cite to W.B. v. Matula, 67 F.3d 484, 494 (3d Cir. 1995).  In Matula, the Third Circuit held that a plaintiff could bring a claim against individual defendants pursuant to § 1983 for violations of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq.  Matuala, 67 F.3d at 493.

The Third Circuit recently re-addressed the issue of whether § 1983 is available to redress violations of federal statutes, and held that its reasoning in Matula "is no longer sound." A.W. v. Jersey City Public Schools, --- F.3d ----, 2007 WL 1500335 (3d Cir. 2007).  In A.W. v. Jersey City Public Schools, a student suffering from dyslexia claimed that he was not afforded a free, appropriate public education because despite ample evidence of his disability, the school district and several teachers and administrators had conducted an inadequate investigation, which left him unidentified and untreated.  The plaintiff brought his claims against the school district and individual defendants under the IDEA,[3] Section 504 of the Rehabilitation Act, and pursuant to § 1983.

After an extensive analysis, the court held that "[t]here is nothing in Section 504 that . . . causes us to conclude that Congress intended to allow § 1983 to be available to remedy Section 504 violations such as those alleged by A.W. [;] [t]here

---

[3]In their Complaint, Plaintiffs concede that they do not have a viable claim under IDEA.  (Compl. ¶ 2.)

7

is no showing that the remedial scheme in Section 504 was intended to complement, rather than supplant, § 1983." Id. (internal citations and quotations omitted).  Accordingly, the court concluded that "§ 1983 is not available to provide a remedy for defendants' alleged violations of A.W.'s rights under Section 504."  Id.

The Third Circuit's holding in A.W. v. Jersey City Public Schools is controlling here.  To the extent that Plaintiffs wish to amend their Complaint to assert a cause of action against the individual defendants pursuant to § 1983 for their violation of Section 504, that amendment would be futile.  Plaintiffs' claims are almost identical A.W.'s, and the Third Circuit was clear that those type of claims cannot be brought against individual defendants pursuant to § 1983.  Consequently, Plaintiffs' Section 504 claims against the individual defendants must be dismissed.  The claims dismissed include those asserted against the individual defendants in Counts I, III, IV[4], and V.

---

[4] Defendants present a separate argument with regard to why Plaintiffs' retaliation claim should be dismissed.  Plaintiffs claim that Defendants retaliated against them when they tried to assert their Section 504 rights.  Defendants argue that Plaintiffs have failed to state a claim because they did not engage in any protected activity for which they were retaliated against.  The Court does not need to address this argument, however, because Plaintiffs have only asserted their retaliation claim against Fred Donatucci, the superintendent, Michael Muldoon, the principal, and Pedro Bertones, the vice-principal, and the Court has already held that individual defendants cannot be held personally liable for any Section 504 violations.

8

### *2. ADA Claims*

Next, with regard to Plaintiffs' ADA claims, Title III of the ADA provides, in relevant part,

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). The regulations under the statute provide that discrimination is prohibited by any private entity that owns, leases (or leases to) or operates a place of public accommodation, Emerson, 296 F.3d at 189 (citing 28 C.F.R. § 36.201(a)), and that "private entity" means a person or entity other than a public entity, id. (citing 28 C.F.R. § 36.104). Thus, the Third Circuit has instructed that any individual defendant here may be liable under Title III only if he or she owns, leases or operates Brandon's school, which is a place of public accommodation. Id. (citing 28 C.F.R. App. B. § 36.104).

Plaintiffs have not made any allegation that the individual teachers or administrators own or lease the school. With regard to what the term "operates" means, the Third Circuit determined that in Emerson, the defendant president, vice-president of academic affairs, and members of the college's faculty and staff did not "operate" the place of public accommodation. Id.   The court explained that Congress did not intend to "impose personal

9

liability upon each person involved in [the plaintiff's] education. Rather, . . . the institution has the power to make accommodations and thus it operates the place of public accommodation and is the proper defendant." Id. at 189 n.3. Similarly here, it is Brandon's school that has the power to make accommodations under the ADA, and not the individual defendants. Accordingly, Plaintiffs' ADA claims in Counts I, III, IV, and V against the individual defendants must be dismissed.[5]

### C. Plaintiffs' Claims for Hostile Environment

As Defendants point out, Plaintiffs do not articulate a particular law on which to base their hostile environment claim. Plaintiffs refer, however, to two New Jersey Supreme Court cases that concern the application of the New Jersey Law Against Discrimination (NJLAD), N.J. Stat. Ann. 10:5-1 to -42.  (Compl. ¶ 62, citing Lehman v. Toys "R" Us, 132 N.J. 587 (1993) and Taylor v. Metzger, 152 N.J. 490 (1998).)  Thus, viewing Plaintiffs' *pro se* Complaint liberally, the Court will construe Plaintiff's hostile environment claim as arising under the NJLAD.

Plaintiffs contend that three teachers, Joan Carr, Brandon's

---

[5] The parties did not brief, and the Court could not find, any case discussing whether individual defendants can be liable for a violation of the ADA for a claim brought pursuant to § 1983.  Because Plaintiffs have not asserted such a claim, the Court will not address the issue, except to note that the reasoning in A.W. v. Jersey City Public Schools, --- F.3d ----, 2007 WL 1500335 (3d Cir. 2007) with regard to IDEA and the Rehabilitation Act is most likely applicable to the ADA as well.

10

math teacher, Daniel Weber, his language arts teacher, and Kelli Costello, his geography teacher, created a hostile environment that harassed and humiliated Brandon.  (Compl. ¶ 63-64.)  Specifically regarding Carr, Plaintiffs claim that she would routinely yell at Brandon in front of the class, stating "you are in an accelerated learning class, I don't know what is wrong with you.  I will not tolerate this behavior."  (Id. ¶ 28.)  Plaintiffs also claim that in response to a request to make an allowance for Brandon's disorganization, Carr commented, "Are you going to use his (Brandon) condition as a crutch?"  (Id. ¶ 30.)

With regard to Costello, Plaintiffs allege that when they explained to Costello that another student stole Brandon's take-home test and asked her to send home another one, Costello stated that she would not send an additional test, and that she would "mark Brandon 5 points off his grade for each day it was late."  (Id. ¶ 37.)

With regard to Weber, Plaintiffs claim that he directed students to write a poem that described something about every student in the class.  (Id. ¶ 40.)  Although some of the students' comments about Brandon "were positive in nature, there were some that were not equally as flattering.  Some of the comments described Brandon as weird, a fool, goofy and some made comments about Brandon's forgetfulness."  (Id.)  Plaintiffs claim that not only did Weber make a comment about Brandon not working

11

to his ability, he should have known that he should not give an assignment that "humiliates and degrades another student," and that he should have reviewed each poem for content.  (Id.)

The NJLAD provides,

> All persons shall have the opportunity to obtain employment, and to obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation, publicly assisted housing accommodation, and other real property without discrimination because of race, creed, color, national origin, ancestry, age, marital status, affectional or sexual orientation, familial status, disability, nationality, sex, gender identity or expression or source of lawful income used for rental or mortgage payments, subject only to conditions and limitations applicable alike to all persons. This opportunity is recognized as and declared to be a civil right.

N.J. Stat. Ann. 10:5-4.

Here, ostensibly, Plaintiffs' claims against Carr, Costello and Weber are that they discriminated against Brandon because of his disability.  Plaintiffs, however, have only cited cases concerning hostile work environment in the employment context, and they have not cited any cases where the NJLAD has been applied in this context.  Recently, the New Jersey Supreme Court has recognized that the NJLAD applies in the school setting with regard to sexual harassment.  L.W. v. Toms River Regional Schools Bd. of Education, 915 A.2d 535, 550 (N.J. 2007).  The court held that a school district may be found liable under the NJLAD for student-on-student sexual orientation harassment that creates a

hostile educational environment when the school district should have known of the harassment, but failed to take action reasonably calculated to end the harassment. Id. The court concluded by stating,

> When a student is subjected to severe or pervasive bullying on the school bus, in the classroom, or at the playground, and a school district fails to adequately respond to that misconduct, that student has a right to redress. However, school districts will be shielded from liability when their preventive and remedial actions are reasonable in light of the totality of the circumstances.

Id. at 553.

Even if this holding could be extended to student-on-student and teacher-on-student harassment due to a learning disability, the case specifically addressed a school district's liability--not individual teacher's liability--and Plaintiffs have not asserted this claim against the school district. Further, Plaintiffs have not provided the Court with any basis by which to extend the NJLAD to the individual teachers in this particular context, and instead, have asserted a novel theory of law.

Courts have held, however, that when a claim asserts a novel legal theory of recovery, a court should be reluctant to grant a motion to dismiss because "novel theories of recovery are best tested for legal sufficiency in light of actual, rather than alleged facts." In re Buckhead America Corp., 178 B.R. 956, 961

(D. Del. 1994) (citing Branch v. FDIC, 825 F. Supp. 384, 397 (D. Mass. 1993); Haley v. Sorani, 118 B.R. 753, 755 (Bankr. N.D. Cal. 1990)).

With that consideration in mind, it is inappropriate to dismiss Plaintiffs' hostile environment claim at this motion to dismiss stage.  First, Plaintiffs are not obligated to assert every factual basis for their claim in their Complaint.  Second, all of Plaintiffs' allegations in their Complaint must be accepted as true.  Thus, whether the actual facts are legally sufficient to support a claim under the NJLAD is an issue to be decided as a matter of law on a motion for summary judgment or at trial.[6]  Consequently, Plaintiffs' NJLAD claims will survive

---

[6]It is worth noting that the New Jersey Supreme Court and the United States Supreme Court have recognized that in assessing the reasonableness of a school district's response to a hostile educational environment, they are mindful that schools are different than workplaces:

> [S]chools are unlike the adult workplace and . . . children may regularly interact in a manner that would be unacceptable among adults.  Indeed, at least early on, students are still learning how to interact appropriately with their peers.  It is thus understandable that, in the school setting, students often engage in insults, banter, teasing, shoving, pushing, and gender-specific conduct that is upsetting to the students subjected to it.

L.W. v. Toms River Regional Schools Bd. of Education, 915 A.2d at 551 (quoting Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 633 (1999)).  Thus, it is questionable whether Plaintiffs' claims against the teachers, although evidently hurtful to Brandon and his parents, are the types of conduct protected by the NJLAD. At this motion to dismiss stage, however, the Court must determine not whether Plaintiffs will ultimately prevail, but whether

14

Defendants' motion to dismiss.[7]

## **CONCLUSION**

For the reasons expressed above, Plaintiffs' claims under Section 504 of the Rehabilitation Act and the ADA against the individual defendants must be dismissed.  Plaintiffs' claim for hostile environment under the NJLAD survives Defendants' motion. An appropriate Order will issue.


Dated: June 26, 2007                         s/ Noel L. Hillman

At Camden, New Jersey                        NOEL L. HILLMAN, U.S.D.J.

---

Plaintiffs are entitled to offer evidence to support their claim. Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1969 n.8 (2007).

[7]The only claim remaining against the individual defendants arises under state law.  Even though the Court has dismissed all claims over which it had original jurisdiction as to those three teachers, the Court will retain supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367.