**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| THOMAS WOODRUFF and, | : | Civil Action No. 06-3815(NLH) |
| MICHELLE WOODRUFF, | : | |
| Individually and on behalf of | : | |
| their minor son, | : | |
| B.W.,[1] | : | |
| | : | **OPINION** |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| HAMILTON TOWNSHIP | : | |
| PUBLIC SCHOOLS, | : | |
| et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

Thomas Woodruff
Michelle Woodruff
2419 Lahn Lane
Mays Landing, NJ 08330

    *Pro Se*

Patrick J. Madden, Esquire
Madden & Madden
108 Kings Highway East, Suite 200
P.O. Box 210
Haddonfield, NJ 08033-0389

    *Attorney for Defendants*

    This matter has come before the Court on Plaintiffs' motion

to amend their complaint, as well as their motion for

reconsideration of the Court's June 26, 2007 Opinion.  For the

reasons expressed below, Plaintiffs' motion to amend will be

---

    [1]The Woodruffs' original Complaint identified the full name
of their son.  In their proposed Amended Complaint, the Woodruffs
now refer to their son by his initials.  The Court respects the
Woodruffs' wishes in this regard, and will instruct the Clerk of
the Court to modify the caption on the docket.

continued for twenty days, and their motion for reconsideration will be denied.

## BACKGROUND

This case concerns a child, who is diagnosed with Attention-Deficit Hyperactivity Disorder (ADHD), and the issue of whether his school and teachers discriminated against him because of his disability.  This case also has a somewhat complicated history. When the Woodruffs filed their discrimination complaint in August 2006, their son had been a seventh grade student at a middle school in the Hamilton Township School District during the preceding academic year.  A few days after they filed their complaint, the Woodruffs filed a motion for emergency relief, asking that this Court order the school district to allow their son to enter eighth grade, as expulsion proceedings had been commenced against their son at the end of the previous school year.  The Woodruffs withdrew their application, however, because they chose to enroll their son in private school.  The individual defendants then filed a motion to dismiss the Woodruffs' claims against them.  The school district did not move to dismiss the claims against it at that time.

On June 26, 2007, in deciding the individual defendants' motion to dismiss, the Court dismissed the Woodruffs' claims under Section 504 of the Rehabilitation Act and the ADA, but allowed the Woodruffs' claim for hostile environment under the

2

NJLAD to survive the motion.  On July 9, 2007, the Woodruffs
moved for reconsideration of the Court's decision.  A few weeks
later, on August 8, 2007, the Woodruffs also moved to amend their
complaint to include a due process claim.  A couple weeks after
that, on August 20, 2007, the Woodruffs again moved for emergency
relief, seeking an order from the Court directing that their son
be permitted to enter Oakcrest High School, as he was a rising
high school freshman and the Woodruffs wished to return their son
to public school.

The Court held a hearing on the Woodruffs' emergency motion
on August 21, 2007.  At the hearing, several issues were raised.
One issue was whether the defendant in this case--Hamilton
Township School District--was the proper party to provide the
Woodruffs with their requested relief, because the Woodruffs
wished to have their son enrolled in Oakcrest High School, which
is part of the Greater Egg Harbor School District, and not the
Hamilton Township district.  Another issue raised was whether the
Woodruffs could proceed *pro se* in representing the claims of
their son.  This issue had been raised in the defendants'
opposition to the Woodruffs' motion to amend their complaint, but
it was also brought to the Court's attention prior to the hearing
via letter from the Hamilton Township defendant.

At the hearing, the Court addressed the issue of whether the
Woodruffs could represent their son's interests, because

3

resolution of that issue impacted all outstanding motions and the
viability of the Woodruffs' case.  The Court determined that
binding legal precedent in this Circuit required that their son
be represented by an attorney, rather than by his parents.  The
Court then directed that if the Woodruffs wished to proceed with
their case, they had to choose to either hire an attorney, or
apply to the Court for *pro bono* representation for their son.

At a telephone conference on August 27, 2007, the Court was
informed that the Woodruffs had obtained legal counsel for their
son.  In order to address the issue of who was the proper party
to the Woodruffs' emergency request to have their son enrolled in
Oakcrest High School, the Woodruffs' attorney filed a separate
action and order to show cause against the Greater Egg Harbor
School District. (See Civil Action No. 07-4135.)

The issue of the Woodruffs' son's enrollment at Oakcrest was
decided in the separate action, and that case has since been
closed.  This action against Hamilton Township, and all of the
motions filed previous to the Woodruffs' application for emergent
relief, are still pending.  Also still pending is the issue of
whether the Woodruffs can appear *pro se* and represent their son
on his discrimination claims, because the attorney hired by the
Woodruffs was only retained for the case against Greater Egg.

Because the defendants raised the issue of the Woodruffs'
standing to pursue their son's claims in their opposition to the

Woodruffs' motion to amend their complaint, the Court will

consider it in that context.  The Court recognizes, however, that

this issue is dispositive to all the other motions pending in

this case, as well as to the viability of the case as a whole.

### DISCUSSION

This Court, as with all other federal courts, is under an

independent obligation to examine its own jurisdiction, and

"standing is perhaps the most important of the jurisdictional

doctrines."  FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 230-31

(1990) (citation omitted) (stating that even if the parties fail

to raise the issue of standing, it may be addressed by the court

*sua sponte* at any stage of the proceedings).

In their original complaint, the Woodruffs asserted claims

that Defendants violated the Americans with Disabilities Act and

Section 504 of the Rehabilitation Act of 1973 by failing to

provide their son with an individualized "504 Plan"; that certain

Defendants, three of B.W.'s teachers, created a hostile

environment for B.W., which the Court has construed as a claim

under New Jersey's Law Against Discrimination (NJLAD); that the

superintendent, principal, and vice-principal defendants

retaliated against them "for bringing to light various issues

with teachers centered around Brandon's 504 Plan and the failure

of the school to act on those issues"; and that they have

suffered emotional distress.  In their motion for leave to file

an amended complaint, the Woodruffs wish to add a due process

claim.

Defendants argue that the Woodruffs do not have standing to

assert their son's discrimination claims.  The Woodruffs counter

that pursuant to a recent United States Supreme Court case, they

can represent their child's interests in court.

The Third Circuit has held as a general proposition that a

non-lawyer appearing *pro se* is not entitled to play the role of

attorney for his children in federal court.  Osei-Afriyie v.

Medical College of Pennsylvania, 937 F.2d 876, 882 (3d Cir.

1991).  Following other circuit courts which have reached the

same conclusion, it explained,

> The choice to appear *pro se* is not a true choice
> for minors who under state law cannot determine their
> own legal actions.  There is thus no individual choice
> to proceed *pro se* for courts to respect, and the sole
> policy at stake concerns the exclusion of non-licensed
> persons to appear as attorneys on behalf of others.
>
> It goes without saying that it is not in the
> interest of minors or incompetents that they be
> represented by non-attorneys.  Where they have claims
> that require adjudication, they are entitled to trained
> legal assistance so their rights may be fully
> protected.

Id. (citations omitted).

Even though the Osei-Afriyie case was decided in the context

of a parent representing a child's claims for medical negligence,

the proposition that a parent cannot represent a child has been

6

applied in cases involving civil rights and constitutional

violation claims.  See, e.g., Cole v. Montague Bd. of Educ., 145

Fed. Appx. 760, 762 (3d Cir. 2005) (in a case involving claims

that a school board violated the parents' due process rights by

banning them from public school without a hearing, illegally

evaluating their child, and violating the No Child Left Behind

Act, the court noting that because the parents were not

attorneys, they could not represent their child in federal court,

and they could only proceed on their own claims); Harris-Thomas

v. Christina School Dist., 145 Fed. Appx. 714, 714 (3d Cir. 2005)

(holding that a court cannot dismiss a minor child's case, which

involved claims that a school district violated a child's rights

under Title VI of the Civil Rights Act of 1964, the Fourteenth

Amendment, and intentionally inflicted emotional distress, when

his mother represents him as a *pro se* litigant); Pinkney v. City

of Jersey City Dept. of Housing and Economic Development, 42 Fed.

Appx. 535, 536 (3d Cir. 2002) (in a case alleging civil rights

violations, the court holding that a guardian or parent cannot

represent an incompetent adult in the courts of this circuit

without retaining a lawyer).

Based on this Third Circuit precedent, it is clear that the

Woodruffs do not have standing to prosecute any of their son's

claims.  Even though they are permitted to proceed *pro se* with

regard to any of their own claims, they cannot appear *pro se* with

regard to their son's claims.[2]

The Woodruffs protest, however, that this precedent bars
their prosecution of their son's claims because they arise in the
context of special education.  To support their position, the
Woodruffs rely a recent Supreme Court case, <u>Winkelman v. Parma
City School Dist.</u>, 127 S. Ct. 1994 (2007).  In <u>Winkelman</u>, the
parents of an autistic child sued their school district for
violations of the Individuals with Disabilities Education Act
(IDEA).  The district court granted judgment on the pleadings and
the Sixth Circuit Court of Appeals dismissed the appeal on the
ground that the parents, who were proceeding *pro se*, could not
prosecute their child's IDEA claim.  The Supreme Court reversed
and remanded.

In making its decision, the Supreme Court considered the
"entire statutory scheme" of the IDEA.  <u>Winkelman</u>, 127 S. Ct. at
2000.  The Court concluded,

> These provisions confirm that IDEA, through its text
> and structure, creates in parents an independent stake
> not only in the procedures and costs implicated by this
> process but also in the substantive decisions to be
> made.  We therefore conclude that IDEA does not

---

[2]The purpose for such a rule has been demonstrated in this
case.  The procedural rules and legal standards governing who is
a proper party are often complicated, and here, prior to the
involvement of their hired counsel, the Woodruffs' emergent
relief motion was not directed to the proper party, precluding a
resolution on the merits.  After counsel was retained, and the
proper parties were brought into the case, the Woodruffs'
emergent motion was then heard.

> differentiate, through isolated references to various
> procedures and remedies, between the rights accorded to
> children and the rights accorded to parents.  As a
> consequence, a parent may be a "party aggrieved" for
> purposes of § 1415(i)(2) with regard to "any matter"
> implicating these rights.  <u>See</u> § 1415(b)(6)(A).  The
> status of parents as parties is not limited to matters
> that relate to procedure and cost recovery.  To find
> otherwise would be inconsistent with the collaborative
> framework and expansive system of review established by
> the Act.

<u>Id.</u> at 2004 (citations omitted).

Accordingly, the Court held that because parents enjoy rights under the IDEA, they are entitled to prosecute IDEA claims on their own behalf.  <u>Id.</u> at 2006.  The Court, however, did "not reach petitioners' alternative argument, which concerns whether IDEA entitles parents to litigate their child's claims *pro se*." <u>Id.</u> at 2007.

Based on their reading of <u>Winkelman</u>, the Woodruffs state, "The Court ruled that parents could represent their children, affirmed parental rights, the importance of parental involvement, and described the essential role that parents play in ensuring their child receives FAPE."  (Pl.'s Reply at 7.)  The Woodruffs' interpretation of <u>Winkelman</u> is only partially correct.  Although the Supreme Court did acknowledge the importance of parents' involvement in their child's education, the Court did not hold that parents can represent their child in court.  The Court explicitly did not make that determination, and, instead, held

9

that because parents "have a legally cognizable interest in the
education of one's child," Winkelman, 127 S. Ct. at 2006, they
are able to prosecute their *own* claims with regard to their
child's education.  The distinction between a parent appearing
*pro se* to prosecute her own claims and a parent serving as legal
counsel for her child is an important one.

      Another important distinction is that the Winkelman decision
was made in the context of the IDEA, and turned "upon the
significance of IDEA's interlocking statutory provisions."  Id.
at 1999.  Based on the Court's extensive review of those
interlocking provisions, the Court held that parents enjoy their
own rights under the IDEA.  Here, the Woodruffs have not asserted
a claim under the IDEA, but instead have asserted claims for
violations of the ADA, Rehabilitation Act, and NJLAD, as well as
for due process violations and emotional distress.  Thus,
construing the Court's opinion narrowly, the Winkelman case is
inapplicable here because the Woodruffs have not brought claims
under the IDEA.

      Even if Winkelman is construed more broadly, the Woodruffs
are still barred from prosecuting the claims of their son.  As
noted by the Woodruffs, the Supreme Court recognized that among
the rights parents enjoy is the right to a free appropriate
public education for their child.  Id. at 2005.  The Supreme
Court also recognized that parents may prosecute this right on

their own behalf without an attorney.  Id. at 2006.

Accordingly, the Woodruffs have a legally cognizable interest in

B.W.'s free appropriate public education, and they may prosecute

this right on their own behalf without an attorney.  This

finding, however, cannot be extended to allow the Woodruffs to

act as their son's attorney on any of *his* claims.  The problem

here is that the Woodruffs have not specifically alleged that

defendants violated their right to their son's free appropriate

public education.  Moreover, the claims that the Woodruffs have

asserted are too amorphous to determine whether they are theirs

or their son's.

The Court will provide the Woodruffs with three options to

correct these problems.  One option is that the Woodruffs may

hire an attorney, or apply for *pro bono* counsel, and their

attorney may file an integrated, amended complaint, asserting

both their claims and/or the claims of B.W.[3]  In the alternative,

the Woodruffs may continue appearing *pro se*, and they may file an

───────────────

[3]When the Woodruffs filed their motion for leave to file an
amended complaint to add a due process claim, they submitted only
the additional claim, and not the due process claim incorporated
with their original claims.  This is procedurally improper,
because when an amended complaint is filed, the amended complaint
supercedes the original version in providing the blueprint for
the future course of a lawsuit.  See Snyder v. Pascack Valley
Hospital,303 F.3d 271, 276 (3d Cir. 2002).  Thus, if the
Woodruffs choose to file an amended complaint as directed by the
Court, it must be one that contains all of their claims.

integrated, amended complaint asserting their claims only.[4]  If

they choose to do this option, the Woodruffs must articulate how

the defendants injured them, and what legal rights of theirs the

defendants violated, which is distinct from pleading their son's

claims.  The third option is that the Woodruffs can do nothing,

and rest on their original and amended claims as filed.[5]  The

Woodruffs will have twenty days to comply with the first two

options, or to inform the Court if they choose the third option.

Following that, the defendants will have the opportunity to move

to dismiss the claims, file their answer, or otherwise follow the

ordinary course provided for in the federal rules of civil

procedure.

It must be noted, however, that the Court's previous

decision on the individual defendants' motion to dismiss stands,

---

[4]Amendments to pleadings are governed by Federal Civil
Procedure Rule 15, which provides that leave to file an amended
pleading "shall be freely given as justice so requires."  Fed. R.
Civ. P. 15(a).  The Third Circuit has shown a strong liberality
in allowing amendments under Rule 15 in order to ensure that
claims will be decided on the merits rather than on
technicalities.  Dole v. Arco Chemical Co., 921 F.2d 484, 487 (3d
Cir. 1990); Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir.
1989).  An amendment must be permitted in the absence of undue
delay, bad faith, dilatory motive, unfair prejudice, or futility
of amendment.  Grayson v. Mayview State Hosp., 293 F.3d 103, 108
(3d Cir. 2002) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

[5]With regard to options two and three, any claims of B.W.'s
will accrue for statute of limitations purposes when he turns
eighteen years old, or sooner, if he becomes an emancipated
minor.  Harris-Thomas v. Christina School Dist., 145 Fed. Appx.
714, 715 (3d Cir. 2005) (citing Osei-Afriyie v. Med. Coll. of
Pa., 937 F.2d 876, 882-83 (3d Cir. 1991)).

and its rulings must be considered in drafting an amended
pleading.  Specifically, no matter which option the Woodruffs
choose, the claims under the Rehabilitation Act and Title III of
the ADA against the individual defendants are still not viable.
Conversely, the NJLAD claim that the Court determined survived
defendants' motion to dismiss may be able to proceed if this
claim is prosecuted by a lawyer representing B.W., or by the
Woodruffs, if they have standing to assert such a claim on their
own behalf.

Additionally, because it also affects the filing of any
amended pleading, the Court must also address the Woodruffs'
motion for reconsideration on the Court's decision on the
individual defendants' motion to dismiss.  In their motion for
reconsideration, the Woodruffs "move for reinstatement" of the
discrimination, negligence, retaliation, and emotional distress
claims against Hamilton Township School District.  (Pl.'s Br. at
1-2, Docket No. 11.)  This request is nonsensical because the
school district did not move to dismiss any claims against it,
and, accordingly, the Court did not address these claims.  Thus,
these claims are still pending.

The Woodruffs also challenge the Court's interpretation of
their ADA claims as being brought pursuant to Title III of the
ADA.  Construing the Woodruffs' ADA claims as under Title III,
the Court dismissed those claims against the individual

defendants because the Third Circuit has instructed that an

individual may be liable under Title III only if he or she owns,

leases or operates a school, which is a place of public

accommodation, and it is B.W.'s school that has the power to make

accommodations under the ADA, and not the individual defendants.

(Op. at 9-10.)

   The Woodruffs explain that they wished to bring their ADA

claims pursuant to Titles I and II, and not Title III.  The

clarification makes no difference with regard to the individual

defendants, however, because the Third Circuit has followed other

circuit courts of appeals in holding that individuals are not

liable under Titles I and II of the ADA, which prohibit

discrimination by employers and public entities respectively.

Emerson v. Thiel College, 296 F.3d 184, 189 (3d Cir. 2002)

(citations omitted).  Thus, under Titles I, II, or III, the

Woodruffs' ADA claims fail as to the individual defendants.  As

such, these claims cannot be reasserted against the individual

defendants in the Woodruffs' or B.W.'s amended pleadings.[6]

### CONCLUSION

   As explained above, the Woodruffs' may either retain an

attorney to prosecute their son's claims, or continue proceeding

---

   [6]This holding does not affect the reassertion of ADA claims
against the school district to the extent that either the
Woodruffs or B.W. have standing and a valid basis for asserting
such claims.

*pro se* and file an amended complaint asserting their claims only.
They may also rest on the original and proposed amended
complaints already filed, and the Court will then complete the
substantive review of the defendants' challenges to these
pleadings.  The Woodruffs must avail themselves of one of these
three options within twenty days of the date of this Opinion and
accompanying Order.  With regard to the Woodruffs' motion for
reconsideration, it is denied.


Dated: December 20, 2007                    s/ Noel L. Hillman

At Camden, New Jersey                       NOEL L. HILLMAN, U.S.D.J.

15