**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

THOMAS WOODRUFF and,        :    Civil Action No. 06-3815(NLH)
MICHELLE WOODRUFF,          :
                            :
                            :    **OPINION**
        Plaintiffs,         :
                            :
     v.                     :
                            :
HAMILTON TOWNSHIP           :
PUBLIC SCHOOLS,             :
et al.,                     :
                            :
        Defendants.         :

**APPEARANCES:**

Thomas Woodruff
Michelle Woodruff
2419 Lahn Lane
Mays Landing, NJ 08330

     *Pro Se*

Patrick J. Madden, Esquire
Madden & Madden
108 Kings Highway East, Suite 200
P.O. Box 210
Haddonfield, NJ 08033-0389

     *Attorney for Defendants*

     This matter has come before the Court on defendants' motion to dismiss plaintiffs' amended complaint.  For the reasons expressed below, defendants' motion will be granted.

<u>**BACKGROUND**</u>

     This is the Court's fourth Opinion in this matter.  Because each Opinion has built upon the one previous, it would be helpful to briefly restate the layered procedural history.

     This case concerns a child, who is diagnosed with Attention-

Deficient Hyperactivity Disorder (ADHD), and the issue of whether his school and teachers discriminated against him because of his disability.  When the Woodruffs filed their discrimination complaint in August 2006, their son had been a seventh grade student at a middle school in the Hamilton Township School District during the preceding academic year.  A few days after they filed their complaint, the Woodruffs filed a motion for emergency relief, asking that this Court order the school district to allow their son to enter eighth grade, as expulsion proceedings had been commenced against their son at the end of the previous school year.  The Woodruffs withdrew their application, however, because they chose to enroll their son in private school.  The individual defendants then filed a motion to dismiss the Woodruffs' claims against them.  The school district did not move to dismiss the claims against it at that time.

On June 26, 2007, in deciding the individual defendants' motion to dismiss, the Court dismissed the Woodruffs' claims under Section 504 of the Rehabilitation Act and the ADA, but allowed the Woodruffs' claim for hostile environment under the NJLAD to survive the motion.  On July 9, 2007, the Woodruffs moved for reconsideration of the Court's decision.  A few weeks later, on August 8, 2007, the Woodruffs also moved to amend their complaint to include a due process claim.  A couple weeks after that, on August 20, 2007, the Woodruffs again moved for emergency

2

relief, seeking an order from the Court directing that their son be permitted to enter Oakcrest High School, as he was a rising high school freshman and the Woodruffs wished to return their son to public school.

The Court held a hearing on the Woodruffs' emergency motion on August 21, 2007.  At the hearing, several issues were raised. One issue was whether the defendant in this case--Hamilton Township School District--was the proper party to provide the Woodruffs with their requested relief, because the Woodruffs wished to have their son enrolled in Oakcrest High School, which is part of the Greater Egg Harbor School District, and not the Hamilton Township district.  Another issue raised was whether the Woodruffs could proceed *pro se* in representing the claims of their son.  This issue had been raised in the defendants' opposition to the Woodruffs' motion to amend their complaint, but it was also brought to the Court's attention prior to the hearing via letter from the Hamilton Township defendant.

At the hearing, the Court addressed the issue of whether the Woodruffs could represent their son's interests, because resolution of that issue impacted all outstanding motions and the viability of the Woodruffs' case.  The Court determined that binding legal precedent in this Circuit required that their son be represented by an attorney, rather than by his parents.  The Court then directed that if the Woodruffs wished to proceed with

3

their case, they had to choose to either hire an attorney, or apply to the Court for *pro bono* representation for their son.

At a telephone conference on August 27, 2007, the Court was informed that the Woodruffs had obtained legal counsel for their son.  In order to address the issue of who was the proper party to the Woodruffs' emergency request to have their son enrolled in Oakcrest High School, the Woodruffs' attorney filed a separate action and order to show cause against the Greater Egg Harbor School District. (See Civil Action No. 07-4135.)

The issue of the Woodruffs' son's enrollment at Oakcrest was decided in the separate action, and that case has since been closed.  As of the Court's last Opinion, this action against Hamilton Township, and all of the motions filed previous to the Woodruffs' application for emergent relief, were still pending. Also still pending was the issue of whether the Woodruffs could appear *pro se* and represent their son on his discrimination claims, because the attorney hired by the Woodruffs was only retained for the case against Greater Egg.

In the Court's December 20, 2007 Opinion, the Court determined that although "the Woodruffs have a legally cognizable interest in B.W.'s free appropriate public education," and "they may prosecute this right on their own behalf without an attorney," that finding "cannot be extended to allow the Woodruffs to act as their son's attorney on any of *his* claims."

(Dec. 20, 2007 Op. at 11.)  Thus, the Court provided the
Woodruffs with three options to correct this problem: (1) retain
an attorney to prosecute their son's claims, (2) continue
proceeding *pro se* and file an amended complaint asserting their
claims only, or (3) rest on the original and proposed amended
complaints already filed.  (Id. at 11-12.)  The Woodruffs chose
to file an amended complaint asserting their claims only.  Their
amended complaint contains claims against the individual
defendants and the school district.  All defendants have now
moved to dismiss in its entirety the Woodruffs' amended
complaint.  The Woodruffs have opposed defendants' motion.

## DISCUSSION

### A.   Jurisdiction

This Court has jurisdiction over plaintiffs' federal claims
under 28 U.S.C. § 1331, and supplemental jurisdiction over
plaintiffs' state law claims under 28 U.S.C. § 1367.

### B.   Motion to Dismiss Standard

When considering a motion to dismiss a complaint for failure
to state a claim upon which relief can be granted pursuant to
Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded
allegations in the complaint as true and view them in the light
most favorable to the plaintiff.  Evancho v. Fisher, 423 F.3d
347, 351 (3d Cir. 2005).  It is well settled that a pleading is

sufficient if it contains "a short and plain statement of the
claim showing that the pleader is entitled to relief."  Fed. R.
Civ. P. 8(a)(2).  Under the liberal federal pleading rules, it is
not necessary to plead evidence, and it is not necessary to plead
all the facts that serve as a basis for the claim.  Bogosian v.
Gulf Oil Corp., 562 F.2d 434, 446 (3d Cir. 1977).  However,
"[a]lthough the Federal Rules of Civil Procedure do not require a
claimant to set forth an intricately detailed description of the
asserted basis for relief, they do require that the pleadings
give defendant fair notice of what the plaintiff's claim is and
the grounds upon which it rests."  Baldwin County Welcome Ctr. v.
Brown, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation
omitted).

A district court, in weighing a motion to dismiss, asks
"'not whether a plaintiff will ultimately prevail but whether the
claimant is entitled to offer evidence to support the claim.'"
Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1969 n.8 (2007)
(quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also
Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)
(stating that the "Supreme Court's Twombly formulation of the
pleading standard can be summed up thus: 'stating ... a claim
requires a complaint with enough factual matter (taken as true)
to suggest' the required element.  This 'does not impose a
probability requirement at the pleading stage,' but instead

'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element"). A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997).   The defendant bears the burden of showing that no claim has been presented.  Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

Finally, a court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. Southern Cross Overseas Agencies, Inc. v. Kwong Shipping Group Ltd., 181 F.3d 410, 426 (3d Cir. 1999).  A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).   If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56.  Fed. R. Civ. P. 12(b).

C.   **Analysis**

The Woodruffs have asserted six claims: Count One for

7

Discrimination in violation of Title II of the ADA, the IDEA, Section 504 of the Rehabilitation Act, and the NJLAD; Count Two for "Harrasment [sic]/Humiliation/Hostile Environment"; Count Three for Negligence; Count Four for "Denial of Due Process Protections"; Count Five for Retaliation; and Count Six for Emotional Distress.  Defendants have moved to dismiss all of the Woodruffs' claims.

### 1.   Plaintiffs' NJLAD claims

The Woodruffs claim that the individual defendants, three teachers and the superintendent, and the school district violated the NJLAD by discriminating against B.W. by not providing him with the necessary services and protections, as well as by creating a hostile work environment for their son.  The Woodruffs also claim that the school district and the superintendent violated the NJLAD by denying the Woodruffs due process with regard to B.W.'s right to a free appropriate public education (FAPE).  All of these claims under the NJLAD fail because the Woodruffs do not have their own cognizable claims for these alleged violations.

In order to have a viable claim under the NJLAD, the Woodruffs must be the person aggrieved.  See N.J.S.A. 10:5-13. All of the Woodruffs' claims under the NJLAD, however, are for alleged harms done to their son--B.W. was discriminated against, B.W. was harassed, and B.W. was denied due process.  These are

8

B.W.'s claims, and not his parents'.  See, e.g., L.W. ex rel.
L.G. v. Toms River Regional Schools Bd. of Educ., 886 A.2d 1090,
1111 (N.J. Super. Ct. App. Div. 2005), modified, 915 A.2d 535
(N.J. 2007) (holding that although the parent "was sorely
distressed by the harassment of her son," she was not an
aggrieved person under the NJLAD because she "was not denied the
advantages of a public education by reason of the bias-based
harassment experienced by her son").  Thus, even though the
Woodruffs may be upset by the alleged discrimination and
harassment of their son, because they were not the "person
aggrieved" by this conduct, they do not have standing to assert
these claims under the NJLAD.

The Woodruffs attempt to save these claims by arguing that
because parents can maintain their own claim under the IDEA as
stated in Winkelman v. Parma City School Dist., 127 S. Ct. 1994
(2007), they have a "party status" for any claim arising in the
special educational context.  This proposition extends Winkelman
too far.  As discussed in the Court's previous Opinions, even
though the Supreme Court held in Winkelman that parents enjoy
their own rights under the IDEA, and that parents have their own
interest in having their child provided with a free appropriate
education, Winkelman cannot be extended to grant the Woodruffs
"party status" under the NJLAD.  (Dec. 20, 2007 Opinion, at 8-
11.)  In order to maintain their claims under the NJLAD, the

Woodruffs must be an aggrieved party who was denied public accommodation because of their disability or other protected status.  <u>See</u> N.J.S.A. 10:5-4.  The Woodruffs, however, were not denied a public accommodation because of their protected status-- rather, it was their son who was allegedly denied that accommodation because of his disability.[1]  A parent's general parental interest in his or her child's education is insufficient to state a claim under the NJLAD.[2]

The Woodruffs also try to save their NJLAD claims by analogizing themselves to a "partnership," which is an entity that has been defined to be a "functional equivalent" of a person under the NJLAD.  The "definitions" section of the statute defines "person" to include "one or more individuals, partnerships, associations, organizations, labor organizations, corporations, legal representatives, trustees, trustees in bankruptcy, receivers, and fiduciaries."  N.J.S.A. 10:5-5.  The Woodruffs argue that they are a "partnership" in that they are "educational partners" with their son with regard to his education.  Even though this may be true under a general

---

[1]The Court has already determined that B.W. has a viable claim under the NJLAD for hostile environment.  (June 26, 2007 Opinion at 14.)  Because, however, the Woodruffs continue to proceed *pro se*, any claims of B.W. have been abandoned.

[2]Whether the Woodruffs' interest in their son receiving a FAPE is sufficient to state a claim under the ADA, Rehabilitation Act, and IDEA is discussed below.

definition of the word "partnership," it is clear based on the plain language of N.J.S.A. 10:5-5 that the term relates to a business entity rather than a collaboration between parents and child.  See DiProspero v. Penn, 874 A.2d 1039, 1048 (N.J. 2005) (explaining that a court is to "ascribe to the statutory words their ordinary meaning and significance, and read them in context with related provisions so as to give sense to the legislation as a whole," and it is not the function of a court "to rewrite a plainly-written enactment of the Legislature or presume that the Legislature intended something other than that expressed by way of the plain language" (internal citations omitted)).

Therefore, based on the foregoing, the Woodruffs' NJLAD claims against all defendants must be dismissed.

### 2.   Plaintiffs' Due Process claim

The Woodruffs have also pleaded that their procedural due process rights under the federal and state constitutions were violated by the school district because their son was not provided with the procedures due to him under the IDEA and Rehabilitation Act.  The Woodruffs have commingled two different procedural due process claims.  The procedural due process provisions under the federal and state constitutions provide a different remedy than the procedures set forth by the federal legislation.  Thus, whether defendants violated the procedures under the IDEA and Rehabilitation Act is a separate inquiry from

11

whether the defendants violated the Woodruffs' constitutional due process rights.

The constitutional guarantee of procedural due process requires "the presence of a legitimate 'property' or liberty interest within the meaning of the Fifth or Fourteenth Amendment." Arnett v. Kennedy, 416 U.S. 134, 164 (1974).  If protected interests are implicated, it must then be decided what procedures constitute "due process of law."  Ingraham v. Wright, 430 U.S. 651, 672 (1977).

Generally, a student has a "legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause." Goss v. Lopez, 419 U.S. 565, 574 (1975).  Thus, schools are not exempt from providing due process to students.  Id. (stating that "we do not believe that school authorities must be totally free from notice and hearing requirements if their schools are to operate with acceptable efficiency").

In addition to a student's property interest in his education, the Supreme Court has long recognized that the right of parents to care for and guide their children, including their education, is a protected fundamental liberty interest.  Anspach ex rel. Anspach v. City of Philadelphia, Dept. of Public Health, 503 F.3d 256, 261 (3d Cir. 2007) (citing cases).  This right is

neither absolute nor unqualified, however.  C.N. v. Ridgewood Bd. of Educ., 430 F.3d 159, 182 (3d Cir. 2005) (citing Lehr v. Robertson, 463 U.S. 248, 256 (1983) (constitutional protection available for parent-child relationship in "appropriate cases"); Croft v. Westmoreland Co. Children and Youth Serv., 103 F.3d 1123, 1125 (3d Cir. 1997) (interest of parents in the care, custody and management of children is "not absolute"; "liberty interest in familial integrity is limited by the compelling governmental interest in the protection of children")).

The Court does not need to explore the boundaries of a parent's liberty interest in the education of his or her child because the Woodruffs have not articulated a claim based on this liberty interest.  Rather, the Woodruffs' due process claim focuses on B.W.'s property interest in his education, and alleges that his property interest was altered without due process.  (See Compl. ¶ 83.)  That claim is not viable, however, because the property interest at stake, and its corresponding procedural due process, belongs to B.W. and not to his parents.  Thus, because B.W. is no longer a plaintiff is this action, his due process claim cannot be prosecuted by his parents.[3]

---

[3]The Woodruff again argue that Winkelman allows them to assert a due process claim.  For the same reasons already stated above and in the Court's prior Opinions, Winkelman cannot be extended to encompass their general due process claim.

13

### 3.    Plaintiffs' FERPA claim

Even though the Woodruffs do not set forth a specific count under the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g, an allegation that defendants violated FERPA is contained within their retaliation claim, Count Five.  The Woodruffs contend that the disclosure of B.W.'s student file to his current school district violated FERPA.  This claim fails, however, because there is no private cause of action under FERPA. Gonzaga University v. Doe, 536 U.S. 273, 287 (2002).

The Woodruffs argue that they can bring their FERPA claim pursuant to 42 U.S.C. § 1983.  This argument is unavailing for two reasons.  First, they have not actually brought that claim pursuant to § 1983.  Second, § 1983 is not a vehicle for a FERPA claim.  See id. at 288.  Thus, the Woodruffs' claim for a FERPA violation must be dismissed.

### 4.    Plaintiffs' Negligence claim and Emotional Distress claim

The Woodruffs contend that the school district "is guilty of instructional and administrative negligence [by] denying the Plaintiffs their right to a FAPE for their son in the process." (Compl. ¶ 82.)  The Woodruffs contend that the school district had a duty to provide their son with a free appropriate education, and breached that duty.  (Id. ¶ 83.)  This claim must fail because it is simply the Woodruffs' IDEA claim recast as a

14

claim for negligence, which cannot be permitted because, as discussed below, the IDEA does not permit money damages.

Correspondingly, the Woodruffs' claim for emotional distress fails because it seeks compensation for the "severe emotional distress that was a reasonably foreseeable consequence of the Defendants' negligence." (Compl. ¶ 92.) Because the Woodruffs' negligence claim must be dismissed, their emotional distress claim based on that negligence must also be dismissed.[4]

### 5.   Plaintiffs' IDEA claims

Within their counts for discrimination and retaliation, the Woodruffs contend that the school district and the individual defendants violated the IDEA by not providing their son with a free appropriate public education. Defendants argue that the Woodruffs' IDEA claims must be dismissed because of their failure to exhaust their administrative remedies.

Under the IDEA, any aggrieved party[5] may "present a complaint . . . with respect to any matter relating to the

_____

[4]The Woodruffs do not articulate whether they are making a claim for intentional infliction of emotional distress or negligent infliction of emotional distress.  Either cause of action would fail.

[5]The Woodruffs' reliance on <u>Winkelman</u> through out their opposition brief is finally applicable here, as <u>Winkelman</u> recognized that parents enjoy their own rights under the IDEA and may prosecute their claims for violations of these IDEA rights. <u>Winkelman v. Parma City School Dist.</u>, 127 S. Ct. 1994, 2004 (2007).

identification, evaluation, or educational placement of the
child, or the provision of a free appropriate public education to
such child." 20 U.S.C. § 1415(b)(6).  The party may elect to have
the complaint investigated by the state educational agency, <u>see</u>
34 C.F.R. § 300.661, or avail itself of an "impartial due process
hearing," 20 U.S.C. § 1415(f).  Any party aggrieved by the
outcome of the due process hearing "shall have the right to bring
a civil action with respect to the complaint presented . . . in a
district court of the United States, without regard to the amount
in controversy."  <u>Id.</u> § 1415(i)(2)(A).  This action must be
initiated within 90 days from the date of the hearing officer's
decision.  <u>Id.</u> § 1415(i)(2)(B).  The district court is authorized
to grant "such relief as the court determines is appropriate,"
including attorneys' fees, reimbursement for a private
educational placement, and compensatory education.  <u>See</u> <u>id.</u> §
1415(i)(3)(B)(i).

The IDEA ordinarily requires, however, that a party exhaust
the IDEA's administrative remedies before pursuing claims under
the IDEA as well as the ADA and Rehabilitation Act.

> Nothing in this chapter shall be construed to restrict
> or limit the rights, procedures, and remedies available
> under the Constitution, the Americans with Disabilities
> Act of 1990 [42 U.S.C.A. § 12101 et seq.], Title V of
> the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et
> seq.], or other Federal laws protecting the rights of
> children with disabilities, except that before the
> filing of a civil action under such laws seeking relief
> that is also available under this subchapter, the
> procedures under subsections (f) and (g) of this

16

section shall be exhausted to the same extent as would
be required had the action been brought under this
subchapter.

20 U.S.C. § 1415(1).

The Woodruffs do not deny that they did not bring their IDEA
claims, or their ADA or Rehabilitation Act claims, before an
administrative law judge prior to filing their lawsuit.  Thus,
based on the plain language of the IDEA, all of these claims must
be dismissed because of the Woodruffs' failure to exhaust their
administrative remedies.

The Woodruffs argue, however, that they should not be
expected to exhaust their administrative remedies because it
would have been futile to do so and would have been inadequate to
protect their rights.  Specifically, the Woodruffs argue that
because they are seeking money damages, which they could not
receive through the administrative process, they did not have to
avail themselves of that process.  Further, the Woodruffs argue
that because their son is now in a different school district,
"injunctive or other equitable relief cannot alleviate past
practices." (Pl. Br. at 12.)  Additionally, the Woodruffs argue
that they are not required to exhaust their administrative
remedies because they did not receive proper notice of their
procedural due process rights under the IDEA.  Finally, the
Woodruffs argue that their IDEA claim is not barred because they
are claiming that the school district had a policy of not

17

fulfilling their duties under the IDEA and Rehabilitation Act.

The Woodruffs are correct that courts have held that in certain circumstances, when it would be impossible or futile to bring a claim before the ALJ, aggrieved parties are relieved from having to exhaust the administrative procedures of the IDEA. Examples of include,

> [1] where the question presented is purely a legal question (Lester H. by Octavia P. v. Gilhool, 916 F.2d 865, 869-70 (3d Cir. 1990)), [2] where the administrative agency cannot grant relief (Komninos by Komninos v. Upper Saddle River Bd.of Educ., 13 F.3d 775 (3d Cir. 1994)), [3] where 'an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law,'" (Association for Community Living in Colorado v. Romer, 992 F.2d 1040, 1044 (10th Cir. 1993) (quoting H.R. Rep. No. 296, 99th Cong., 1st Sess. 7 (1985))[and] . . . [4] "where plaintiffs allege structural or systemic failure and seek system wide reforms[,]" Romer, 992 F.2d at 1044; see also Beth V. by Yvonne V. v. Carroll, 87 F.3d 80, 89 (3d Cir. 1996).

Grieco v. New Jersey Dept. of Educ., 2007 WL 1876498, *6 (D.N.J. June 27, 2007); see also Beth V. by Yvonne V. v. Carroll, 87 F.3d 80, 89 (3d Cir. 1996) (discussing similar exceptions).  The Woodruffs' situation does not fit in any of these categories, however.

With regard to the Woodruffs' contention that their request for money damages would make exhausting their administrative remedies futile, that position is unavailing.  First, compensatory education, rather than money damages, are the

appropriate damages for violations of the IDEA.[6]  See Brandon V.
v. Chichester School Dist., 2007 WL 2155722, *3 (E.D. Pa. July
25, 2007) (reviewing decisions from other circuits, including the
First, Second, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth and
Eleventh, and holding, "The Court agrees with the overwhelming
weight of authority that compensatory damages are generally
inconsistent with the purpose and statutory scheme of the IDEA,
and until the Third Circuit holds otherwise, will not recognize
damages as an available form of relief in IDEA actions").

Second, the Woodruffs' reliance on W.B. v. Matula, 67 F.3d
484, 492 (3d Cir. 1995) is misplaced.  Matula did hold that
because money damages pursuant to § 1983 were not available at
the administrative proceeding, the plaintiffs did not need to
exhaust their administrative remedies.  Matula, 67 F.3d at 496.
That ruling was abrogated, however, by A.W. v. Jersey City Public
Schools, 486 F.3d 791 (3d Cir. 2007), where it was determined
that § 1983 was not an appropriate vehicle for IDEA violations.
Thus, Matula is inopposite, and the use of that case to support
their position is unavailing.[7]

---

[6]Compensatory education has been found to include placement
in a private school.  See Draper v. Atlanta Independent School
System, --- F.2d ---, 2008 WL 603280, *13 (11th Cir. March 6,
2008).

[7]Matula also excused a party from participating in the
administrative procedures when the factual record had already
been fully developed at the administrative level.  Matula, 67
F.3d at 496. That exception is inapplicable here.

Third, even though B.W. is no longer in the Hamilton Township School District, B.W. could be provided future compensatory education if it were determined that the school district did violate the IDEA.[8]  Thus, requiring the Woodruffs to follow the administrative procedures would not be futile because an ALJ would be able to provide them with the appropriate relief if they prevailed.

With regard to the Woodruffs' contention that they are not obligated to exhaust their administrative remedies because they were not provided with proper notice of the procedures, the Woodruffs have failed to state a viable argument.  In their opposition brief, the Woodruffs state, "plaintiffs were never given notice of their procedural rights under IDEA."  (Pl. Br. at 12.)  In their Complaint, the Woodruffs allege, "It can be proven that Plaintiffs were never advised of their rights as parents, notified of any evaluations or meetings, notified of any results or actions taken at a 504 committee meeting, and never given an opportunity to participate."  (Compl. ¶ 21.)  Based on these statements, the Woodruffs contend that they are excused from the

---

[8]It is important to note that the Woodruffs have added an IDEA claim for the first time to this new complaint.  They did not include an IDEA claim when they filed their original complaint on August 14, 2006, when B.W. was still a student in the Hamilton Township School District.  Had they included an IDEA claim at that time, their requested relief would not have been in regard to "past practices," and, thus, could not have served as a basis for futility.

20

administrative process.  The problem with these claims, however, is that they are bald assertions without enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of such claims.

As a primary matter, the Woodruffs have not even alleged what IDEA provisions the school district violated when it failed to give them notice.[9]  Allowing for leniency in interpreting a complaint filed by *pro se* plaintiffs, it appears that they are claiming that § 1415 (d)(1)(A) of the IDEA was violated.  That section provides, "A copy of the procedural safeguards available to the parents of a child with a disability shall be given to the parents only 1 time a year, except that a copy also shall be given to the parents . . . (i) upon initial referral or parental request for evaluation; (ii) upon the first occurrence of the filing of a complaint under subsection (b)(6) of this section; and (iii) upon request by a parent."  20 U.S.C.A. § 1415

---

[9]In their opposition brief, the Woodruffs cite to "20 U.S.C. § 1415(k)(8)."  There is no subsection (k)(8) in that IDEA provision.  Subsection (k) generally deals with guidelines for placing a student in an alternative school setting.  To the extent that the Woodruffs contend that they were not notified of these guidelines, that argument is subsumed by their general allegation that they were not notified of any IDEA procedures.  Furthermore, whether the school district violated subsection (k) is a substantive argument with regard to how the school district violated the IDEA.

The Woodruffs also cite to N.J.S.A. 18:A46-5.  This provision explains the functions of a child study team, and although it may serve as a substantive basis with regard to the school district's alleged failures, it is inapplicable to the Woodruffs' argument with regard to notice under the IDEA.

(d)(1)(A).  The educational agency may also "place a current copy
of the procedural safeguards notice on its Internet website if
such website exists."  Id.  § 1415 (d)(1)(B).

Certain courts have held that exhaustion is not required if
plaintiffs were not given full notice of their procedural rights
under the IDEA.  See Covington v. Knox County School System, 205
F.3d 912, 917 (6th Cir. 2000).  The burden of demonstrating
futility or inadequacy rests on the party seeking to bypass the
administrative procedures.  Id. (citing Honig v. Doe, 484 U.S.
305, 327 (1988)).

Here, however, even if the Woodruffs cited to the notice
provision in their complaint, their claim that they did not
receive proper notice, and thereby are excused from the
administrative process, would fail because they have not
articulated how the school district violated this provision.
See, e.g., C.M. v. Board of Educ. of Union County Regional High
School Dist., 128 Fed. Appx. 876, 881 (3d Cir. 2005) (reviewing
cases from other circuits and noting that an IDEA claim for
technical noncompliance with procedural requirements was not
viable where the alleged violations did not result in
"substantive deprivation"); Gonzalez v. Puerto Rico Dept. of
Educ., 969 F. Supp. 801, 809 (D.P.R. 1997) (stating that "the
fact that a school may have committed a procedural error . . .
does not . . . automatically constitute a violation of the IDEA")

22

(citations omitted).  Furthermore, when the alleged failure occurred, and when the Woodruffs filed their initial complaint in August 2006, this notice provision was not even an issue.  Up until this point, the Woodruffs had not even asserted an IDEA claim which would trigger the notice provisions--indeed, in their prior submissions to the Court, they conceded that they did not have a viable IDEA claim.  (See June 26, 2007 Opinion at 7 n.3 ("In their Complaint, Plaintiffs concede that they do not have a viable claim under IDEA.  (Compl. ¶ 2.))).  Additionally, the Woodruffs have not articulated how the administrative process would not be able to provide them with a remedy to the district's alleged notice failure.  Therefore, baldly stating now that they did not receive proper notice under the IDEA is insufficient to avoid the administrative process.

Finally, the Woodruffs contend that they should be excused from exhausting their administrative remedies because the school district has a policy of not fulfilling their duties under the IDEA and Rehabilitation Act.  This argument also fails.

The Third Circuit has recognized that plaintiffs may be "excused from the pursuit of administrative remedies where they allege systemic legal deficiencies and, correspondingly, request system-wide relief that cannot be provided (or even addressed) through the administrative process."  Beth V. by Yvonne V. v. Carroll, 87 F.3d 80, 89 (3d Cir. 1996).  "[I]n pursuing these

23

claims plaintiffs must show that the policies are contrary to law, and that the underlying purpose of exhaustion would not be serviced by requiring procedural compliance." Ellenberg v. New Mexico Military Institute, 478 F.3d 1262, 1277 (10th Cir. 2007), cited in Grieco v. New Jersey Dept. of Educ., 2007 WL 1876498, *6 (D.N.J. June 27, 2007).

The Woodruffs, however, have failed to allege a "systematic legal deficiency" in the school district's procedures, and they have not called for "system-wide" relief.  The Woodruffs simply make a sweeping claim that the school district has a policy of violating the IDEA, which is insufficient to survive a motion to dismiss.  Further, they do not articulate how the administrative process would not remedy that alleged policy and practice.

A primary purpose of requiring administrative exhaustion prior to filing a civil suit in the IDEA context is to "develop the factual record and resolve evidentiary disputes concerning, for example, evaluation, classification, and placement." W.B. v. Matula, 67 F.3d 484, 492 (3d Cir. 1995).  Additionally, the use of the administrative process supports "Congress' view that the needs of handicapped children are best accommodated by having the parents and the local education agency work together to formulate an individualized plan for each handicapped child's education." Komninos v. Upper Saddle River Bd. of Ed., 13 F.3d 775, 778 (3d Cir. 1994) (quoting Smith v. Robinson, 468 U.S. 992, 1011-12

(1984)); <u>see also</u> <u>L.T. v. Mansfield Tp. School Dist.</u>, 2007 WL 2332308, *8 (D.N.J. Aug. 10, 2007) (stating that the exhaustion requirement serves several important purposes: (1) permitting the exercise of agency discretion and expertise on issues requiring these characteristics;(2) allowing the full development of technical issues and a factual record prior to court review; (3) preventing deliberate disregard and circumvention of agency procedures established by Congress; and (4) avoiding unnecessary judicial decisions by giving the agency the first opportunity to correct any error).

Here, the Woodruffs have never availed themselves of the administrative process, and, thus, there has been no opportunity to benefit from such a process or to realize the reasons why Congress established such a process.  Only a few, very limited exceptions excuse a parent from the IDEA administrative procedures, and the Woodruffs have not met their burden of showing that those exceptions apply to them.  Consequently, the Woodruffs' IDEA claims must be dismissed for their failure to exhaust their administrative remedies.

### 6.   Plaintiffs' ADA and Rehabilitation Act claims

Within their counts for discrimination and retaliation, the Woodruffs contend that the school district and the individual defendants violated the ADA and the Rehabilitation Act.  As a primary matter, in the Court's prior Opinion, the ADA and

Rehabilitation Act claims against the individual defendants were dismissed.  (Dec. 20, 2007 Op. at 10, 14.)  Thus, it must only be determined whether the Woodruffs' ADA and Rehabilitation Act claims against the school district can survive defendants' motion to dismiss.

As noted above, the IDEA requires the exhaustion of administrative remedies before a party can bring not only an IDEA claim, but also claims for violations of the ADA and Rehabilitation Act.  20 U.S.C. § 1415(1) ("Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], Title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.").  This IDEA provision has been interpreted to apply when a party is essentially using the same conduct by a defendant as the basis for her IDEA, ADA, and Rehabilitation Act claims.  See M.G. v. Crisfield, 2008 WL 611679, *9 (D.N.J. March 5, 2008) (citing cases within the Third Circuit that have found the IDEA's

26

exhaustion requirement to apply to concurrent ADA and Rehabilitation Act claims when those claims are essentially a "repackaging" of one another).

Here, all of the Woodruffs' claims arise out of their contention that the school district failed to provide their son with a free appropriate public education.  Even though the Woodruffs allege in some detail the various circumstances surrounding this alleged failure, it is ultimately the lack of a FAPE that serves as the basis for their IDEA, ADA and Rehabilitation Act claims.  As discussed above, the Woodruffs have not demonstrated how the administrative procedures would not provide them with a remedy for the school district's failure to provide their son with a FAPE.  Thus, for the same reasons why the Woodruffs' IDEA claims must be dismissed, their ADA and Rehabilitation Act claims must be dismissed as well.

## CONCLUSION

For the reasons expressed above, all counts of the Woodruffs' complaint must be dismissed against all defendants. An appropriate Order will be entered.


Dated: April 8, 2008                       s/ Noel L. Hillman

At Camden, New Jersey             NOEL L. HILLMAN, U.S.D.J.


27